[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 286.]

CUYAHOGA COUNTY BAR ASSOCIATION *v.* WILLIAMSON.

[Cite as *Cuyahoga Cty. Bar Assn. v. Williamson*, 1995-Ohio-338.]

*Attorney at law—Misconduct—Indefinite suspension—Failing to act competently—Failing to zealously represent client—Failure to cooperate in investigation of alleged misconduct—Violation of a Disciplinary Rule—Illegal conduct involving moral turpitude—Conduct prejudicial to the administrator of justice.*

(No. 94-2655—Submitted April 18, 1995—Decided August 23, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 93-55.

———————————

{¶ 1} In an amended complaint filed on March 31, 1994, relator, Cuyahoga County Bar Association, charged respondent, David A. Williamson, last known address in Brook Park, Ohio, Attorney Registration No. 0003928, with seven counts of professional misconduct. Respondent was personally served notice of the complaint at his last known address, but did not answer. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court considered the matter on relator's motion for default, filed pursuant to Gov.Bar V(6)(F).

{¶ 2} With respect to Count I, the evidence submitted to support the motion for default established that Steven and Annie Stone retained respondent in September 1991 to file for a dissolution. Pursuant to the couple's separation agreement, respondent attempted to provide Steven Stone's employer with a Qualified Domestic Relations Order ("QDRO") to obtain certain employee benefits for Annie Stone. The employer rejected the QDRO as invalid and supplied a sample QDRO for respondent's use. On October 8, 1992, during relator's investigation, respondent claimed under oath that he had resubmitted an acceptable

QDRO; however, he did not provide evidence of this in response to the motion for default. Respondent also did not reply to Annie Stone's many attempts to contact him about the status of the QDRO, which evidently was never resubmitted to the employer. The panel determined that this conduct violated DR 6-101 (failing to act competently) and 7-101 (failing to zealously represent client).

{¶ 3} With respect to Count II, the panel found that respondent had failed to cooperate in the investigation of his alleged misconduct, in violation of Gov.Bar R. V(4)(G), because he had promised, but did not produce a copy of the QDRO he purportedly resubmitted to Steven Stone's employer.

{¶ 4} With respect to Count III, the panel found respondent in violation of DR 1-102(A)(1) (violation of Disciplinary Rule), (A)(3) (illegal conduct involving moral turpitude), (A)(4) (conduct involving fraud, deceit, dishonesty, or misrepresentation), and (A)(5) (conduct prejudicial to the administration of justice) because relator represented that he had testified falsely about resubmitting the QDRO to Steven Stone's employer.

{¶ 5} With respect to Count IV, evidence established that Gary and Karen Halcik, who reside in Georgia, retained respondent in July 1990 to represent them in a personal injury action. Respondent agreed to represent the Haciks on a contingency fee basis. At some point during 1991, respondent promised to file suit on behalf of the Halciks, but during 1992, he ignored their many attempts to learn the status of their case, including confirmation that he had filed the complaint. In October 1992, the Halciks sent respondent a certified letter requesting a status report and a copy of the complaint. Respondent did not reply and has since failed to communicate with the Halciks. The panel found that this conduct violated DR 1-102 (misconduct), 6-101, and 7-101.

{¶ 6} The panel found an additional violation of Gov.Bar R. V(4)(G), as charged in Count V, because respondent did not reply to relator's telephone calls

2

and four letters, including a certified letter to his last known address, requesting his response to the Halciks' grievance.

{¶ 7} With respect to Count VI, evidence established that Garold Seifert paid respondent $750 in February 1991 to represent him in an unemployment compensation case. Respondent failed to make an appearance in the matter, causing Seifert's case to be dismissed for want of prosecution. Respondent also failed to account to Seifert for unearned fees, to refund Seifert's money, and to respond to Seifert's attempts to communicate with respondent. On September 30, 1992, Seifert obtained a default judgment against respondent for $750 in the Berea Municipal Court, Small Claims Division, which remains unsatisfied. The panel determined that this conduct violated DR 1-102 and 6-101.

{¶ 8} Finally, the panel found a third violation of Gov.Bar R. V(4)(G), as charged in Count VII, because respondent did not reply to relator's telephone calls and four letters, including three certified letters to his last known address, requesting his response to Seifert's grievance.

{¶ 9} The panel recommended that respondent receive the sanction suggested by relator—an indefinite suspension from the practice of law. The board adopted the panel's report, including its findings of fact, conclusions of law and recommendation.

_____

ROBERT S. BALANTZOW, JAMES R. FOOS and EDWARD S. MOLNAR, for relator.

_____

**Per Curiam.**

{¶ 10} We have reviewed the record and agree with the board's findings of misconduct and its recommendation. Respondent is therefore indefinitely suspended from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

———————————